*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* SHIMEL, Minors.

UNPUBLISHED
June 22, 2023

Nos. 361668; 361672
Wexford Circuit Court
Family Division
LC No. 18-028357-NA

Before: CAMERON, P.J., and K. F. KELLY and M. J. KELLY, JJ.

PER CURIAM.

In these consolidated appeals,[1] respondents appeal as of right the order terminating their parental rights to the minor children CES, BRS, and KES under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist and no reasonable likelihood they will be rectified within a reasonable time), (c)(*ii*) (additional conditions exist and no reasonable likelihood they will be rectified within a reasonable time), (g) (failure to provide proper care or custody), and (j) (reasonable likelihood of harm if child is returned to care of parent).[2] We affirm.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

This case arose after Children's Protective Services (CPS) learned that respondent-father had kicked respondent-mother and JF out of their home, and would not allow them to return. During their investigation, CPS workers discovered respondents were using illegal substances, including methamphetamine. The trial court took jurisdiction over the children[3] and respondents

---

[1] *In re Shimel Minors*, unpublished order of the Court of Appeals, entered June 22, 2022 (Docket Nos. 361668 and 361672).

[2] Respondent-mother has another minor child, JF. The trial court initially took jurisdiction over JF, but jurisdiction was terminated after JF was placed in the care of his legal father.

[3] BRS and KES were born during this case. The trial court took jurisdiction over these children after their births.

were ordered to participate in a case service plan, which included substance abuse and domestic violence services.

Over the course of several years, respondents partially participated in services and partially benefited from those services, but they never did so fully. For example, respondents achieved sobriety from methamphetamine. However, both parents engaged in loud and vitriolic disagreements with each other that they largely minimized, and both engaged in yelling and swearing at case workers. Respondent-father displayed an inability to refrain from yelling and cursing in front of the children or in other contexts, and respondent-mother displayed an inability or unwillingness to protect the children from respondent-father's conduct. After respondent-father reported that he could not read, workers offered reading assistance and other accommodations. Expert evidence at the termination hearing showed that respondent-father's loud and aggressive conduct was harming the children and that neither respondent was inclined to change their ways, leading the trial court to terminate their parental rights. This appeal followed.

## II. REASONABLE EFFORTS

Respondent-father argues the trial court erred in terminating his parental rights because the Department of Health and Human Services (DHHS) failed to make reasonable efforts at reunification. He claims that DHHS failed to accommodate his reading difficulties, and that he substantially complied with the case service plan.[4] We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

"The time for asserting the need for accommodation in services is when the court adopts a service plan." *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012) (quotation marks and citation omitted). Respondent-father did not raise any objection to the adequacy of services when the trial court adopted the case service plan. "However, even if a parent does not object or otherwise indicate that the services provided were inadequate when the initial case services plan is adopted, such an objection or challenge may also be timely if raised later during the proceedings." *In re Atchley*, 341 Mich App 332, 337; ___ NW2d ___ (2022). At a hearing on June 18, 2021, respondent-father disclosed to the trial court that he was illiterate. Therefore, respondent-father's challenge to the reasonableness of respondent's reunification efforts based on his inability to read is preserved as to any alleged inadequacies after June 18, 2021. *Id*.

We review for clear error preserved challenges to a trial court's findings regarding reasonable efforts. *In re Smith*, 324 Mich App 28, 43; 919 NW2d 427 (2018). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citation omitted). However,

---

[4] Respondent-mother also appears to argue that DHHS failed to make reasonable efforts at reunification. However, this argument was not contained in respondent-mother's questions presented, and she offered no substantive argument explaining how DHHS failed to make reasonable efforts at reunification. Therefore, we decline to consider this argument as to respondent-mother. MCR 7.205(E)(4) ("Unless otherwise ordered, the appeal is limited to the issues raised in the application and supporting brief.").

unpreserved challenges are reviewed for plain error affecting substantial rights. *In re Sanborn*, 337 Mich App 252, 258; 976 NW2d 44 (2021). Under the plain-error rule, "respondents must establish that (1) error occurred; (2) the error was 'plain,' i.e., clear or obvious; and (3) the plain error affected their substantial rights," and also that the error "seriously affected the fairness, integrity or public reputation of judicial proceedings." *In re Ferranti*, 504 Mich 1, 29; 934 NW2d 610 (2019) (quotation marks, citations, and alterations omitted).

## B. LAW AND ANALYSIS

"Under Michigan's Probate Code, [DHHS] has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017). If DHHS is aware that the parent suffers from a disability, it has an affirmative duty to incorporate "reasonable accommodations" that are "tailored to [the] disability" into its service plan and services. *Id*. at 87-88, 89-90. However, the parent has a commensurate responsibility to participate in and demonstrate benefit from those services. *In re Atchley*, 341 Mich App at 339. A parent's failure to participate in, comply with, and benefit from a service plan is evidence that the parent will not be able to provide the child with proper care and custody and that the child will be harmed if returned to the parent's care. *In re Kaczkowski*, 325 Mich App 69, 77; 924 NW2d 1 (2018).

We disagree with respondent-father's assertion that DHHS failed to reasonably accommodate his disability. The record is clear that throughout this case, DHHS was aware that respondent-father had a "learning disability," but there is no evidence DHHS knew he was illiterate until he advised the court of the same at the hearing on June 18, 2021. Therefore, DHHS cannot be faulted for failing to accommodate respondent-father's illiteracy prior to being made aware of this issue. The evidence also shows that after June 18, 2021, respondent-father was offered reading accommodations, which he oftentimes refused. Respondent-father had a responsibility to benefit from services offered, and he cannot now claim the services were inadequate where he refused accommodations for these services. *In re Atchley*, 341 Mich App at 339. Further, to the extent respondent-father utilized reading accommodations, respondent-father does not explain how these services were inadequate.

Respondent-father also argues that reasonable efforts were not made and that he "substantially complied" with much of the case service plan—including substance abuse therapy, parenting classes, and anger management. However, he does not explain how these services were deficient to achieving reunification. "Insufficiently briefed issues are deemed abandoned on appeal." *In re Rippy*, 330 Mich App 350, 362 n 5; 948 NW2d 131 (2019) (quotation marks and citation omitted). This argument is abandoned and we decline to consider it now.

## III. STATUTORY GROUNDS

Respondent-mother argues there were not statutory grounds to terminate her parental rights because she complied with, and benefitted from, her case service plan. We disagree.

## A. STANDARD OF REVIEW

We review for clear error the trial court's decision that there were statutory grounds for termination. *In re Olive/Metts Minors*, 297 Mich App 35, 40-41; 823 NW2d 144 (2012). The trial court's decision must be more than maybe or probably wrong. *In re Sours Minors*, 459 Mich 624, 633; 593 NW2d 520 (1999). We must not "substitut[e] [our] judgment for that of the trial court." *In re Hall*, 483 Mich 1031, 1031; 765 NW2d 613 (2009). And we should consider the trial court's "special opportunity" to evaluate the credibility of witnesses. MCR 2.613(C); *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

## B. LAW AND ANALYSIS

"A court may terminate a respondent's parental rights if one or more of the statutory grounds for termination listed in MCL 712A.19b(3) have been proven by clear and convincing evidence." *In re Olive/Metts Minors*, 297 Mich App at 40. "[O]nly a single statutory ground need be established in support of termination." *In re Martin*, 316 Mich App 73, 90; 896 NW2d 452 (2016). A parent's failure to participate in, comply with, and benefit from a service plan is evidence that the parent will not be able to provide the child with proper care and custody and that the child will be harmed if returned to the parent's care. *In re Kaczkowski*, 325 Mich App at 77.

As noted, the trial court terminated respondent-mother's parental rights under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j). Termination is proper under subsection (c)(*i*) when, "[t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." As to this subsection, the trial court found that respondent-father was continuing to engage in aggressive and verbally abusive conduct toward respondent-mother in private and in front of the children. Respondent-mother continued to minimize or permit respondent-father's behavior. Both respondents refused relevant services and denied that their behavior was problematic and harmful to the children. On the basis of these findings, the trial court found there were statutory grounds to terminate respondents' parental rights.

There is no clear error in this reasoning. The trial court took jurisdiction over this case, in part, due to significant domestic discord between respondents. At the termination hearing, there was evidence presented showing respondent-mother's failure to take seriously respondent-father's aggressive behavior and that respondents continued to have serious disagreements in front of the children. Because there was testimony at the termination hearing showing continued domestic discord between respondents, there is no clear error in the trial court's findings under subsection (c)(*i*).

Respondent-mother's arguments in this appeal do not change this conclusion. She contends that termination was not proper because there was evidence she participated in services, and there was some testimony showing she benefitted from those services. However, we defer to the trial court as factfinder in this case, and we will not reverse the trial court's order, absent clear evidence to the contrary. *In re Hall*, 483 Mich at 1031. Although there was some contradictory evidence, respondent-mother's arguments do not explain how the trial court erred in relying on evidence that the conditions leading to adjudication continued to exist. We therefore affirm the trial court's finding that termination was proper under MCL 712A.19b(3)(c)(*i*). Given our

conclusion as to subsection (c)(*i*), we need not consider the other statutory grounds for termination. *In re Olive/Metts Minors*, 297 Mich App at 40.

## IV.  BEST INTERESTS

### A.  BEST-INTEREST FINDING

Respondent-father and respondent-mother argue that the trial court erred in finding termination was in the children's best interests.  We disagree.

### 1.  STANDARD OF REVIEW

Termination of parental rights requires findings of statutory grounds for termination and that termination is in the children's best interests.  *In re Olive/Metts Minors*, 297 Mich App at 40. Whether termination of parental rights is in a child's best interests must be proven by a preponderance of the evidence.  *In re Moss,* 301 Mich App 76, 90; 836 NW2d 182 (2013). " 'Preponderance of the evidence' means such evidence as, when weighed with that opposed to it, has more convincing force and the greater probability of truth." *People v Cross*, 281 Mich App 737, 740; 760 NW2d 314 (2008).  We review a trial court's findings of fact in termination proceedings, including whether termination of parental rights is in a child's best interest, for clear error.  *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014).

### 2.  LAW AND ANALYSIS

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5).  The court may consider several non-exhaustive factors when deciding whether termination of parental rights is in a child's best interests.  These include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home.  *In re Olive/Metts Minors*, 297 Mich App at 41-42.  The court may also consider psychological evaluations, the child's age, continued involvement in domestic violence, and a parent's history.  *In re Jones,* 286 Mich App 126, 131; 777 NW2d 728 (2009).

"The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App at 713.  In considering the child's best interests, the trial court's focus must be on the child and not the parent.  *In re Moss,* 301 Mich App at 87.  When more than one child is involved, a trial court must consider each child's best interests separately. *In re Olive/Metts Minors*, 297 Mich App at 42.  A trial court need not, however, make "individual" and "redundant factual findings" if the children's interests do not differ significantly.  *In re White*, 303 Mich App at 715-716.

The trial court weighed the best-interest factors, finding that most favored termination of respondents' parental rights.  On appeal, respondents raise several challenges to these findings. Although we consider these arguments, we conclude that each is meritless.  The trial court's findings were supported by the record and there is no clear error requiring our reversal.

Respondent-father and respondent-mother argue that the trial court gave insufficient weight to the bond they had with their children. In analyzing this factor, the trial court recognized that respondents loved the children and that there was a bond between respondents and the children, but the children had a stronger bond with the foster parents. The trial court relied on evidence that the parents interacted well with the children during their parenting time visits. The trial court also referenced expert testimony that CES, and by implication the other children, had been traumatized and did not regard respondents as safe; the same expert also opined that respondents were not likely to change their ways in time to give the children the home they needed. On appeal, respondents appear to challenge the expert's conclusions as to their bond with the children. But as the factfinder in this case, the trial court was free to give due weight to the testimony. MCR 2.613(C); *In re Miller*, 433 Mich at 337. Therefore, the trial court did not clearly err in relying on this testimony when it concluded this factor favored termination.

Respondent-father also contends that the trial court attributed CES's hypersexuality to respondents, and that this finding weighed against returning the children to respondents. We disagree. The trial court did not mention CES's hypersexuality or the possibility of sexual abuse in its bench ruling, and the evidence shows that nobody was actually concerned that CES was being sexually abused. The expert witness who mentioned hypersexuality explained that it could be a symptom of anxiety and chronic stress, consistent with his testimony that CES had been traumatized from exposure to respondents' domestic violence.

Respondent-father next challenges the trial court's finding that respondents' visit history with the children favored termination. We agree with respondent-father that the trial court wrongly held some missed parenting-time visits against respondents. The trial court cited the number of parenting-time visits that respondents had missed, and criticized respondents for having done so. However, all of those missed visits occurred relatively early in the case, and by the end, they had a nearly perfect visitation history. The trial court did not appear to recognize that it was relying on plainly stale information, and it should not have implied that respondents had made no progress as to that particular concern. Nevertheless, the trial court did not overstate the significance of respondents' failure to comply with and benefit from services. As discussed, respondents continued to refuse services and drug screenings throughout the case, and they were terminated from services due to their own misconduct. Given the persistent discord between respondents during parenting-time visits, the fact that respondents appeared for those visits is of little importance. The trial court was appropriately concerned by respondents' failure to engage in and benefit from services.

## B. CONFLICT PANEL

Respondent-father next challenges this Court's holding in *In re Moss*, 301 Mich App at 90, that the best interests of the child need only be established by a preponderance of the evidence. He asks this Court to: (1) convene a conflict panel overturning *In re Moss* and (2) declare that the best-interest determination must be met by clear and convincing evidence. This Court is bound by published opinions issued on or after November 1, 1990, unless overturned or modified in relevant part by our Supreme Court or by a conflict panel of this Court. MCR 7.215(J)(1). This Court may

disagree with an earlier opinion and seek to declare a conflict with that prior opinion. MCR 7.215(J)(2). However, respondent-father's arguments in this appeal do not persuade us to convene a conflict panel, and we decline to do so.

Affirmed.

/s/ Thomas C. Cameron
/s/ Kirsten Frank Kelly
/s/ Michael J. Kelly